Filed 2/17/22  P. v. Garcia CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B311190 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA082262) |
| v. | |
| CESAR GUADALUPE GARCIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————————

Cesar Garcia shot Ricardo Mejia as the two drove in separate vehicles on the eastbound 210 freeway on February 27, 2008.  A jury convicted Garcia of attempted premeditated murder during which he discharged a firearm causing great bodily injury, discharge of a firearm with gross negligence, and assault with a firearm while personally using a firearm.

On October 19, 2020, Garcia petitioned the trial court for resentencing under Penal Code section 1170.95,[1] alleging that he had been convicted of attempted murder under a theory that he could no longer be convicted under because of changes made to sections 188 and 189 effective January 1, 2019 by Senate Bill No. 1437.  (See Stats. 2017, ch. 1015, §§ 1-4.)  The trial court declined to appoint counsel, concluding that Garcia was ineligible for relief under section 1170.95 as a matter of law, and denied Garcia's petition on October 27, 2020.

The law applicable to Garcia's appeal has changed significantly since the trial court entered its order.  In July 2021, the Supreme Court issued its opinion in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).  And in October 2021, the Governor signed Senate Bill No. 775 (S.B. 775), effective January 1, 2022.

Read together, *Lewis* and S.B. 775 establish that the trial court erred when it denied Garcia's petition without appointing counsel.  Nevertheless, we conclude that the trial court's error was harmless under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).  We will affirm the trial court's order.

---

[1] Further statutory references are to the Penal Code.

# BACKGROUND

The factual background is from the opinion in Garcia's direct appeal.

## A. The Attempted Murder

"The defendant Garcia, his wife Yesenia, and the victim Mejia all worked at the Bloomfield Bakery. Garcia worked the shift from 6:00 a.m. to 2:00 or 3:00 p.m. Yesenia worked the 3:00 p.m. to 3:00 a.m. shift, and Mejia worked the 3:00 p.m. to midnight shift. In approximately 2005, Mejia met Yesenia at work, and they began dating about six months later. They engaged in sexual relations for about a month but Mejia ended the relationship when he discovered that Yesenia was married. Although Mejia remembered seeing Garcia at work on two occasions, he did not know that Garcia was Yesenia's husband. The first occasion that he noticed Garcia was when Garcia stood next to his desk looking at him curiously. The second occasion was in the bakery parking lot. Mejia was in his car with his live-in girlfriend, who also worked there, when Garcia, who was walking from one building to another, passed in front of Mejia's Toyota pickup truck and looked inside, '[a]lways staring at us,' as he walked past.

"Approximately a week and a half before the shooting, after leaving work at midnight, as Mejia was driving his usual route home, he noticed a white Honda Civic with its lights off at Irwindale and Foothill. As the two vehicles entered the 210 freeway, the Honda's lights, one bright 'bluish' color, and the other 'yellowish' color came on. He slowed to allow the Honda to pass but it never did. He then increased his speed because the Honda was tailgating him. Although Mejia moved over to allow the other car to pass, the Honda 'just got next to' Mejia. About 15

3

to 20 miles later, Mejia took the Mountain Avenue exit and made a right turn. The Honda was still with him. To determine whether the Honda was in fact following him, Mejia sped up and made a fast U-turn at an island on Mountain. Mejia was able to see the faces of both occupants. At the time, he did not recognize either but noticed that they were both males. At a court hearing in April, 2008, however, Mejia recognized one as Garcia.

"On February 27, 2008, at midnight, Mejia left work in his truck. A car with dim headlights pulled behind him when he stopped for the traffic light at Irwindale and Foothill and followed him onto the eastbound 210 Freeway. The car was a medium-size, 'brown, goldish color,' American-made sedan with oval, almond shape headlights. Mejia was driving slowly in the right lane, because of the presence of cones and roadwork. As Mejia activated his left turn signal preparing to move to the next lane, the other vehicle pulled alongside his left side, preventing Mejia from merging into the lane. Mejia noticed the driver, the car's sole occupant, was male but 'it was so dark right [at] that spot of the freeway [that Mejia] didn't get to see the person . . . who was shooting at [him],' five or six times. The shots shattered the truck's front driver and front passenger windows. A bullet struck Mejia's arm, and two grazed his chest. Knocking down some cones, Mejia sped away.

"At 3:00 a.m. the same day, Yesenia left work and used her key[2] to unlock her gold color Oldsmobile Cutlass, which was still where she had parked it earlier with nothing apparently having

---

[2] "Garcia had the only other keys to Yesenia's Oldsmobile Cutlass. Although the car, which had been stolen previously, could be started without a key, a key was needed to open the car door.

4

been disturbed.  While driving home, she heard strange sounds from the back of the car.  Garcia crawled from the trunk area into the pulled down rear seat.  Garcia, who looked 'strange,' said he wanted to talk about their relationship.  At some point she stopped the car and moved into the front passenger seat and Garcia, who held a gun, got into the driver's seat.  Garcia asked to be forgiven for having gone out with someone else.  Yesenia responded that she did not want to be with him anymore, because he had been unfaithful to her and had hit her.

"During a later police interview, Yesenia stated that after Garcia emerged from the trunk where he was hiding, he accused her of not loving him and of seeing someone else instead of going to work.  At some point, Yesenia, who was then in the passenger seat, tried to exit the car but Garcia pulled her back by her hair.  He also grabbed her around her neck which prevented her from breathing for about a minute.  He pointed the gun at her head and said, 'For love people do a lot of things.'  When he lowered the gun, Yesenia tried to take it away from him but the gun went off near Garcia's leg, striking him.  He told her, 'You don't love me, uh, you don't like me.  Lo-Look what you've done to me.'  'He said, "I love you a f—k of a lot.  I think I'm capable of doing anything." '  While driving to their house, which was behind Yes[e]nia's sister's house, Garcia again pointed the gun at her and said, ' "what did you think I was playing with you?" '  He then pointed the gun at the windshield and fired two shots.  Upon their arrival, Garcia told Yesenia, 'I still have one left,' and pointed the gun at her temple.  After hearing a 'click,' Yesenia ran out of the car into her sister's house seeking protection.

"Returning to her Oldsmobile some time after 5:30 a.m. to look for her cell phone, Yesenia found a .22 caliber casing on the

car's floor which she gave to police. At the hospital, a doctor removed a .22 caliber bullet from Mejia's arm. Police recovered a .22 caliber bullet and a .22 caliber bullet fragment from the driver's door of Mejia's truck. An expert testified that the bullets, the bullet fragment, and casing could have come from the same gun.

"On February 29, 2008, the police detained Garcia at the Bloomfield Bakery. He first identified himself as 'Roberto Fraijo' but eventually admitted that his name was Cesar Garcia. He admitted hiding in Yesenia's car trunk to spy on her but denied having a gun.

"During the investigation, police showed Mejia four photographs of different cars. Mejia was first shown photographs of a gold Honda, a gold Nissan, and a gold American car. Mejia focused on the shape of the car's headlights before selecting the American car. He wrote on the photograph, 'This is the type of car that shot at me. . . .' Police then showed Mejia a photograph of a fourth gold color car. He was shocked that it was Yesenia's car. Mejia wrote under the image, 'This is the car that shot . . . at me.' He explained he got a 'really good' look at the car during the shooting incident and recognized the car in this photograph as Yesenia's, the one she drove when they were dating and drove everyday to work. Shown a photographic lineup of six males, he selected photographs two and five as depicting the complexion, i.e., the shape of the face and skin color, of the male who followed him in the incident prior to the shooting. Photograph two was a picture of Garcia."[3] (*People v. Garcia* (Mar. 29, 2010, B211029) pp. 3-6 [nonpub. opn.] (*Garcia I*).)

---

[3] Garcia was charged in separate counts with attempting to murder both Yesenia and Mejia. The jury convicted him only for

6

We modified Garcia's sentence, and affirmed the trial court's judgment as modified. (*Garcia I, supra*, B211029 at pp. 9-10.)

**B. Garcia's Section 1170.95 Petition for Resentencing**

Garcia filed a petition under section 1170.95 on October 19, 2020, asking the trial court to resentence him for his conviction because, he alleged, he was convicted of attempted murder under the natural and probable consequences doctrine or the felony murder rule and he could no longer be convicted of attempted murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 effective January 1, 2019. On his form section 1170.95 petition, Garcia checked the box requesting that the trial court appoint counsel to represent him. The trial court summarily denied Garcia's petition on October 27, 2020 without appointing counsel.

In its order denying Garcia's petition, the trial court explained that "[t]he petition is denied because the petitioner was convicted of attempted murder and not murder."

Garcia failed to file a timely notice of appeal. In March 2021, however, he filed a request for permission to file a notice of appeal under the constructive filing doctrine, which we granted. Garcia filed a notice of appeal on May 13, 2021.

**C. Post-Appeal Legal Developments**

**1.** *Lewis*

In July 2021, the Supreme Court issued its opinion in *Lewis, supra*, 11 Cal.5th 952. In that opinion, the court concluded that "petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . and

---

attempting to murder Mejia. (*Garcia I, supra*, B211029 at p. 2, fn. 2.)

that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Id.* at p. 957.) The trial court's failure to appoint counsel, the Supreme Court concluded, was subject to a harmless error analysis under *Watson, supra,* 46 Cal.2d 818. (*Lewis*, at pp. 957-958.)

### 2. S.B. 775

On October 5, 2021, the Governor signed S.B. 775, which became effective January 1, 2022. As pertinent to this appeal, S.B. 775 amended section 1170.95 to include as eligible for resentencing persons convicted of "attempted murder under the natural and probable consequences doctrine." (Stats. 2021, ch. 551, § 2, subd. (a); § 1170.95, subd. (a).)

Garcia addressed *Lewis* in his opening brief here. The People addressed both *Lewis* and S.B. 775 in their brief. Garcia did not file a reply brief.

### DISCUSSION

As amended by S.B. 775, section 1170.95 allows one "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter" to "file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a), italics added.) "[P]etitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . and . . . only *after* the appointment

8

of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis*, *supra*, 11 Cal.5th at p. 957.)

S.B. 775 amended section 1170.95, effective January 1, 2022, to expressly include as eligible for resentencing those convicted of "attempted murder under the natural and probable consequences doctrine." (Stats. 2021, ch. 551, § 2, subd. (a).) S.B. 775, therefore, renders Garcia's petition for resentencing facially sufficient to invoke the trial court's duty to appoint counsel to represent Garcia under section 1170.95, subdivision (b)(3). Because *Lewis* established that a section 1170.95 petitioner is entitled to the appointment of counsel upon the filing of a facially sufficient petition, the trial court's denial of Garcia's petition before appointing counsel was erroneous under section 1170.95 in its current form. (See *Lewis*, *supra*, 11 Cal.5th at p. 957.)

*Lewis* also instructs us to consider whether the trial court's error was prejudicial under *Watson*, *supra*, 46 Cal.2d 818. In this case, we conclude the error was harmless.

The record of conviction in this matter establishes that Garcia was neither tried nor convicted of attempted murder under a natural and probable consequences theory. The jury was instructed that to find Garcia guilty of murder, it had to conclude that Garcia had "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." The People also alleged in this case that the attempted murder was "willful, deliberate, and premeditated." "To constitute willful, deliberate, and premeditated attempted murder," the jury was told, "the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and,

having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being." The record does not reflect that the jury was instructed on the natural and probable consequences doctrine or any other theory of implied malice. Instead, the jury found true the allegation that Garcia's attempt to murder Mejia was "willful, deliberate[,] and premeditated . . . ."

Garcia cannot establish that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019," as required by section 1170.95, subdivision (a)(3). On that basis, as a matter of law Garcia cannot establish that he is entitled to relief under section 1170.95, even as amended by S.B. 775. The trial court's error is harmless. (See *Watson*, *supra*, 46 Cal.2d at p. 836.)

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.